**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

NEWRIVER, INC. ,

                                        Plaintiff,

            - v -                                       Civ. No. 1:08-MISC-61
                                                            (GLS/RFT)

NEWKIRK PRODUCTS, INC.,

                                        Defendant.


**APPEARANCES:**                          **OF COUNSEL:**

WHITEMAN OSTERMAN & HANNA LLP              ALAN J. GOLDBERG, ESQ.
*Attorney for Plaintiff*
One Commerce Plaza
Albany, New York 12260

WOLF, GREENFIELD & SACKS, P.C.            MICHAEL A. ALBERT, ESQ.
*Attorney for Plaintiff*                   ILAN N. BARZILAY, ESQ.
600 Atlantic Avenue
Boston, Massachusetts 02210

HESLIN ROTHENBERG FARLEY & MESTI, P.C.     ROBERT E. HESLIN, ESQ.
*Attorney for Defendant*                   BRETT M. HUTTON, ESQ.
50 Columbia Circle                         LEE PALMATEER, ESQ.
Albany, New York 12203-5160

BROMBERG & SUNSTEIN LLP                    ROBERT L. KANN, ESQ.
*Attorney for Defendant*                   KIMBERLY J. SELUGA, ESQ.
125 Summer Street                          KERRY L. TIMBERS, ESQ.
Boston, Massachusetts 02110-1618


**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## **MEMORANDUM-DECISION and ORDER**

On November 30, 2006, NewRiver, Inc. (NewRiver) commenced a patent infringement case against Newkirk Products, Inc. (Newkirk) in the United States District Court for the District of Massachusetts.  Dkt. No. 1-2, Lee Palmatter, Esq., Decl., dated July 11, 2008, Ex. A, Compl.  Count One of the Complaint pleads that Newkirk's infringement of NewRiver's patent '635 was knowingly and wilful.  Compl. at ¶ 20.  On April 5, 2007, Newkirk filed its Answer.  Palmatter Decl., Ex. B, Answer.  Approximately a year later, on June 19, 2008, NewRiver served subpoenas upon Attorneys Robert Heslin and Wayne F. Reinke, who either work or reside within the Northern District of New York.  *Id.* Exs. C & D.

Newkirk moves this Court to quash these subpoenas and to issue a protective order.  Dkt. Nos. 1, 1-3, Def.'s Mem. of Law, dated July 11, 2008.  NewRiver opposes Newkirk's Motion.  Dkt. Nos. 4, Pl.'s Mem. of Law, dated Aug. 19, 2008, & 4-7, John L. Strand, Esq., Decl., dated Aug. 18, 2008.  Newkirk filed a Reply to NewRiver's Opposition.  Dkt. Nos. 7, Def.'s Reply Mem. of Law, dated Sept. 9, 2008, & 8, Lee Palmateer, Esq., Decl., dated Sept. 9, 2008.

For the reasons stated below, Newkirk's Motion is **denied**.

### **I.  BACKGROUND**

The parties essentially agree to these basic facts.  As noted above, NewRiver accuses Newkirk, *inter alia*, of wilful patent infringement.  During the course of discovery, especially with regard to the element of wilfulness, Newkirk produced written opinions of non-infringement (the Opinions) by its attorneys, Heslin Rothenberg Farley & Mesti P.C., as well as other attorney-client communications related to the Opinions.  Attorneys Robert Heslin and Wayne Reinke authored those Opinions.  In reliance upon the advice of counsel defense, that being Newkirk's decision to

rely on the non-infringement opinions in defense of the allegations of wilful infringement, Newkirk has also produced work product referencing such previously disclosed communications.  Dkt. No. 8, Palmateer Reply Decl. at ¶ 3.  We note that Attorney Heslin is also acting as one of Newkirk's trial counselors.

By voluntarily surrendering these documents, NewRiver argues that Newkirk has waived its attorney-client privilege, and possibly work product protection, with regard to the subject matter of the Opinions.  There have been depositions of Newkirk's employees but, nonetheless, NewRiver seeks the depositions of these opinion counselors.  Accordingly, on June 19, 2008, NewRiver served subpoenas to have these attorneys deposed on July 16, 2008, however, prior to the latter date, Newkirk filed this Motion to quash the subpoenas.

## II.  ANALYSIS

To appreciate what is at stake, it is incumbent to enunciate the current state of the law regarding wilful infringement.

> [P]roof of willful infringement permitting enhanced damages requires at least a showing of objective recklessness.  [T]o establish willful infringement, a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent. If this threshold objective standard is satisfied, the patentee must also demonstrate that this objectively-defined risk (determined by the record developed in the infringement proceeding) was either known or so obvious that it should have been known to the accused infringer.

*Voda v. Cordis Corp*., 536 F.3d 1311, 1327 (Fed. Cir. 2008) (quoting *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (internal quotation marks and citations omitted).

Under the objectively reckless standard, the state of mind of the accused infringer is not relevant.

*In re Seagate Tech., LLC*, 497 F.3d at 1371.  Wilfulness will depend on an infringer's conduct prior to filing the complaint.  *Id*. at 1374 (prelitigation conduct).

Often, as it appears to be the facts in our case, an accused infringer asserts an advice of

counsel defense.  By asserting this defense, the accused wilful infringer attempts to establish that

"due to reasonable reliance on advice from counsel, its continued accused activities were done in

good faith."  *In re Seagate Tech., LLC*, 497 F.3d at 1369.  Once a party chooses to rely upon the

advice of counsel, the attorney-client privilege with regard to all attorney-client communication

related to the same subject matter is waived.  *In re EchoStar Commc'n Corp.*, 448 F.3d 1294, 1299

& 1301 (Fed. Cir. 2006).  This waiver, however, does not grant *carte blanche* the accuser's ability

to rummage through all of the attorneys' files or to have unfettered access to the defense litigation

strategies.  *Id.* at 1303.  Because counsel's opinion is not critical for its legal correctness,

> it is important to the inquiry whether it is 'thorough enough, as combined with other
> factors, to instill a belief in the infringer that a court might reasonably hold the patent
> is invalid, not infringed, or enforceable.'  It is what the alleged infringer knew or
> believed, and by contradistinction not what other items counsel may have prepared
> but did not communicate to the client, that informs the court of an infringer's
> willfulness.

*Id.* at 1303 (quoting *Ortho Pharm. Corp. v. Smith*, 959 F.2d 936, 944 (Fed. Cir. 1992)).

Consequently, advice of counsel waives protection for any and all documents or opinions that

embody any communication regarding the validity, enforceability, and infringement of the patent

that were disclosed to the alleged accuser.  Conversely, non-disclosed work product remains immune

from discovery.  *Id.* at 1304.[1]

Subsequently, because *EchoStar* did not address it, the Federal Circuit was called upon  to

determine whether this advice of counsel subject matter waiver extended to the trial counsel's

privileged communication with the accused infringer and his work product.  Noting a significant

distinction between the roles of opinion counsel and trial counsel, the Federal Circuit found

---

[1]  It is now clear that the advice of counsel defense waives attorney-client privileged documents and work
product documents that were shared with the alleged infringer, as well as documents memorializing the attorney-client
communications.  *In re Seagate Tech., LLC*, 497 F.3d 1360, 1370 (Fed. Cir. 2007) (citing *In re EchoStar Commc'n
Corp.*, 448 F.3d 1294, 1299, 1302-04 (Fed. Cir. 2006)).

communications of trial counsel had minuscule relevance on whether it supported or refuted the opinion counsel's communications. *Id*. at 1374. In sum, the Federal Circuit held, as a general proposition, that the advice of counsel defense did not constitute a waiver of either the attorney-client privilege for communications with the trial counsel or trial counsel's work product, outside other legal principles that may apply. *Id*. at 1374-76.

What may all of this encompass? It is clear that the scope of discovery is relegated to prelitigation and gaining trial counsel's opinions is not relevant. *Convolve, Inc. v. Compaq Computer Corp.*, 2007 WL 4205868, at *3 (S.D.N.Y. Nov. 26, 2007). The accuser needs to focus on whose opinion the defendant is relying upon and then needs to separate from all other privileged communications those communications made and created before litigation, which were shared with the alleged infringer. *Id*. at *4.

Now that we know the scope of the waiver, which apparently Newkirk recognizes as well since it has already shared all documents, attorney-client privileged and work product, related to communications relative to non-infringement, we must determine who shall be deposed. Newkirk's employees have already been deposed on the issue of advice of counsel and Newkirk's action. What remains as our sole issue is whether Attorneys Heslin and Reinke, the Opinions authors, will be deposed, keeping in mind that Heslin also serves as trial counsel.

In determining whether to allow a deposition of an opposing counsel, we are required to consider the factors set forth in *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 72 (2d Cir. 2003): (1) the need to depose the lawyer, (2) the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation, (3) the risk of encountering privilege and work-product issues, and (4) the extent of discovery already conducted. We agree with

the observation that opinion counsel in a patent infringement case offers unique information given his role regarding the subject matter.  It is has been noted that "it is routine in patent cases that the patentees are entitled to depose opposing opinion counsel on the subject bases for their opinions." *Murata Mfg. Co., Ltd., v. Bel Fuse Inc.*, 2007 WL 1174826, at *2 (S.D.N.Y. Apr. 20, 2007).[2] Contrary to Newkirk's contention that such is not the regular course of discovery within a patent infringement case where the advice of counsel defense is asserted, we note that the opinion counselors, *In re Seagate*, were made available for a deposition ostensibly without an objection.  497 F.3d at 1376; *see also Convolve Inc. v. Compaq Computer Corp.*, 2008 WL 190588, at *2 (S.D.N.Y. Jan. 2, 2008) (opinion counselors directed to continue their depositions).

We are keenly aware that extensive discovery has already occurred, but it remains uncertain what privileged communications and work product have been shared.  Presumably, only the attorney-client privileged communications and work product created before the filing of the Complaint have been disclosed.  We are also acutely cognizant that since one of the opinion counselors is also acting as one of the trial attorneys, the lines may be blurred between prelitigation opinion related disclosures and post Complaint communications with trial counsel, the latter of which may remain confidential.  However, Newkirk should not be allowed to evade an inquiry into the opinions simply because it chose one of the opinion counselors as its trial counsel.  *Murata Mfg. Co., Ltd.*, 2007 WL 1174826, at *2.  We also acknowledge that there is a risk of encountering non-disclosed work product and trial generated work product and communications between client and

---

[2] Newkirk argues that NewRiver's legal premise for conducting a deposition of trial counsel has been rejected by *EchoStar*.  That is not completely accurate.  Actually, it was *In re Seagate Tech* that limited the amount of direct disclosure from trial counsel.  However, there is a caveat: although trial attorneys' files would be protected from discovery, the "attorneys themselves would have no work product objection to depositions."  *In re Seagate*, 497 F.3d at 1376.

trial counsel.  Yet, with proper guidance, that risk may be minimized.

From the parties' submissions, it appears that disclosure has been relatively comprehensive. Motions for Summary Judgment were filed at the conclusion of discovery and after the filing of this Motion to Quash.  These events beg the question whether a deposition of opinion counsel is even necessary at this stage of the litigation.  It could be argued that NewRiver had ample opportunity to determine the objective facts from Newkirk.  In this respect, Newkirk argues that the depositions are not necessary.  However, NewRiver should not be denied an opportunity to fully address the scope of engagement, the full extent of the information and opinions shared with the client, whose opinions were provided and when they occurred, the discussions between counsel and client on the validity, enforcement, and infringement of the product in question, and whatever else may have transpired relating to the prelitigation opinions.

Considering all of the factors, we will permit depositions of both Heslin and Reinke with certain limitations.  First, these depositions will not occur unless the Complaint survives the pending Motions for Summary Judgment.  Second, Heslin's and Reinke's state of mind are not relevant, only what was communicated relative to the patent invalidity, infringement, or noninfringement. *Convolve, Inc. v. Compaq Computer Corp.*, 2007 WL 4205868, at *3 (gaining trial counsel's opinions are not relevant).  Third, unless the trial attorneys also waived their attorney-client privileged communications and work product, Heslin will not be deposed regarding any trial related communications and strategies.  *In re Seagate*, 497 F.3d at 1374 (finding that communications of trial counsel have little, if any, relevance or significance regarding prelitigation conduct).[3]  What is

---

[3]  The Federal Circuit did not set an absolute rule regarding waiver of trial counsel's work product and communications.  For example, if trial counsel has engaged in chicanery, a trial court may waive the privileges and protection.  *In re Seagate*, 497 F.3d at 1374-75.  However, no allegations of this nature are present in this case.

relevant in this context must be determined by delineating between the prelitigation and litigation work product. Post-Complaint work product has nominal value in terms of Newkirk's prelitigation conduct. Fourth, Heslin and Reinke will not be interrogated regarding non-disclosed work product nor the competency of the non-infringement opinions. Counsel's knowledge and mental impressions that were not conveyed to the client have no bearing on the alleged infringer's wilfulness. *In re EchoStar Commc'n* Corp., 448 F.3d 1302-05 (noting, among other things, that counsel's opinion is not important for legal correctness). Fifth, inquiries may be made into Newkirk's objective assessment of the patent and its own conduct. It is important to the inquiry whether the advice and opinions were thorough enough to instill a belief in the infringer that a court might reasonably hold the patent invalid, not infringed, or enforceable. The interrogator must remember that the issue is what the alleged infringer knew or believed, and by contradistinction not what other items counsel may have prepared but did not communicate to the client, that informs the court of an infringer's willfulness. Nonetheless, it would be permissible to inquire into all conversations counselors had with Newkirk about this patent, what materials were presented to Newkirk, their discussions with their client about the patents at the time the opinions were proffered, which may include technical information, and those documents referencing the communications between them.

Lastly, NewRiver asserts that Helsin has become a fact witness since he has authenticated certain documents for Newkirk's Motion for Summary Judgement. Pl.'s Mem. of Law at p. 8. Authentication, in and of itself, does not support the claim that Heslin is a fact witness. Additionally, other persons and employees have also authenticated these documents. But, in addition to authenticating certain documents, Heslin rendered the following statement: "Based upon my examination of the Prosecution History of '635 Patent, Exhibit[s] [B], [C], [D], [E],[F], [G], [H],

[I], [J], and [K] w[ere] not before the Examiner during prosecution of the application which became the '635 Patent."  Dkt. No. 4-7, Ex. A, Robert E. Heslin, Esq., Decl., dated July 3, 2008.  Such a curious statement would be meaningless, unless it reflects Heslin's examination of the Patent Application prior to the filing of the Complaint, which would have a bearing on the validity, enforcement, and infringement of '635 Patent.  Then, it would be very probative as to the advice given to Newkirk.  These documents and their presence or absence in the '635 Patent Application may be relevant as to what may have been communicated to Newkirk regarding the Patent, assuming, of course, that Heslin's examination of the file occurred prelitigation.  Therefore, the documents and the examination of the Patent Application are fertile orbits to explore.

Accordingly, based upon all of the foregoing, it is hereby ordered that Newkirk's Motion to Quash, Dkt. No. 1,  is **denied**.  The depositions of Heslin and Reinke may proceed consistent with the directions of this Order.

**IT IS SO ORDERED**.
Albany, New York
December 4, 2008

RANDOLPH F. TREECE
United States Magistrate Judge